UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RICHARD MUTSCHLER,
<u>Plaintiff-Appellant,</u>

v.

HOUSING AUTHORITY OF THE CITY OF
RALEIGH, NORTH CAROLINA; STEVE
BEAM, Former Acting Executive
Director, in his individual and

official capacities,
<u>Defendants-Appellees,</u>

and

No. 97-1388

FLOYD A. CARTER, Former Executive
Director, in his individual and
official capacities,
<u>Defendant.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CA-95-626-5-H)

Argued: October 31, 1997

Decided: November 24, 1997

Before HAMILTON, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Woodson Rutherford, JOYCE L. DAVIS & ASSOCIATES, Raleigh, North Carolina, for Appellant. Raymond Mark Davis, CRANFILL, SUMNER, HARTZOG, L.L.P., Raleigh, North Carolina, for Appellees. **ON BRIEF:** Joyce L. Davis, Zoe G. Mahood, JOYCE L. DAVIS & ASSOCIATES, Raleigh, North Carolina, for Appellant. Dan M. Hartzog, CRANFILL, SUMNER, HARTZOG, L.L.P., Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In October 1992, Lorraine Denise Hinton and her infant son, Shaunessy D. Jones, died after being overcome by carbon monoxide fumes in their apartment at Walnut Terrace Apartments, a public housing unit operated by the Raleigh Housing Authority (RHA). Investigators determined that the carbon monoxide gas reached deadly levels in the Hinton apartment due to poor installation and maintenance of the four boilers located in a boiler room directly beneath the apartment.

The tragedy at Walnut Terrace generated a great deal of media attention in the Raleigh, North Carolina, metropolitan area. Investigative reports in the Raleigh News & Observer and on Raleigh TV 5 focused their attention on the management of the RHA in an attempt to find the party or parties responsible for the deaths of Hinton and her son. During their reporting, members of the media unearthed a cache of memoranda written by Richard Mutschler, head of maintenance at Walnut Terrace, notifying management in the most urgent terms that the boilers at the complex were dangerous. In April 1992, for example, Mutschler wrote a memorandum encouraging management at RHA to take action "now to prevent possible death or injury

2

to residents and personnel." (J.A. at 92.) After the discovery of his memoranda, Mutschler's name figured prominently in the newspaper and television reports relating to the deaths at Walnut Terrace.

In response to the public demands for accountability, the RHA Board of Directors decided to undertake an independent investigation of the deficiencies leading to the deaths at Walnut Terrace. The investigator, Judge Howard Manning, Jr., went to the scene, reviewed the documentation, interviewed members of management and the maintenance workers at Walnut Terrace, and issued a thorough, detailed report. The Manning Report concluded that "[a]ccountability for the tragedy . . . rests . . . all the way from the top to the bottom of the Raleigh Housing Authority." (J.A. at 314.) Specifically, Judge Manning found that the deadly carbon monoxide buildup in the boiler room was the result of a combination of the maintenance department's failure to perform the routine task of tuning the boilers* and management's failure to understand the import of keeping the boilers tuned.

After the Manning Report was issued in March of 1993, Mutschler's employment at RHA was terminated. He filed a complaint in the Superior Court of Wake County, North Carolina, claiming, inter alia, that his termination was in violation of the First Amendment because it was the result of retaliation by RHA and its then-director, Steve Beam, for statements made to the press about the dangerous condition of the boilers prior to the deaths at Walnut Terrace. Defendants, RHA and Beam, removed the case to the federal district court where they moved for summary judgment.

The motion was referred to a magistrate judge who issued a memorandum and recommendation that summary judgment be granted. The

_____

*"Tuning a boiler" refers to a process by which the boiler's flue gasses are evaluated to determine whether carbon monoxide output is within a safe range. If the carbon monoxide level is too high, the oxygen and carbon dioxide intake of the boiler is adjusted until the carbon monoxide output is sufficiently reduced. The tuning process can be accomplished through the use of special monitoring equipment designed for the task or can be attempted by "eye balling" the flame to determine whether it is burning cleanly.

3

magistrate judge concluded that Mutschler did not raise a genuine issue of material fact as to all required elements of the First Amendment retaliation claim. To make out such a claim the public employee must show that the protected speech: (1) involved a matter of public concern such that the employee's interest in making the protected statement outweighed the employer's interest in maintaining an efficient workplace, and (2) was a motivating or substantial factor in the termination decision. See Hughes v. Bedsole, 48 F.3d 1376, 1385 (4th Cir. 1995). If the plaintiff is able to make that showing, the burden then shifts to the defendant to show, by a preponderance of the evidence, that the same termination decision would have been made in the absence of protected speech. See id. at 1386.

The magistrate judge assumed that Mutschler met his initial burden of demonstrating protected speech that was a motivating or substantial factor in the termination decision. The magistrate judge found, however, that summary judgment was proper because defendants had shown, by a preponderance of the evidence, that it was the Manning Report's indictment of the routine maintenance practices at the Walnut Terrace complex, of which Mutschler was in charge, that caused his termination. Therefore, the magistrate judge concluded that defendants had met their burden of proving that Mutschler would have been terminated even in the absence of protected speech.

After de novo review, the district court adopted the magistrate judge's memorandum and recommendation. The court additionally found that plaintiff had failed to meet his initial burden of showing that his speech had been a motivating or substantial factor in the firing decision.

Mutschler appeals the district court's order, arguing that summary judgment was improper because he put forth sufficient evidence to raise a genuine issue of material fact as to whether RHA's firing decision was motivated by protected speech. Additionally, Mutschler claims that the district court erred in finding that defendants had shown by a preponderance of the evidence that the discharge would have occurred in the absence of protected speech. We have reviewed the record, briefs, and pertinent case law in this matter, and we have had the benefit of oral argument. Our careful review persuades us that the rulings of the district court were correct. Accordingly, we affirm

4

on the reasoning set forth in the district court's opinion. <u>See</u> <u>Mutschler v. Raleigh Hous. Auth.</u>, No. 5:95-CV-H-1 (E.D.N.C. Feb. 19, 1997).

<u>AFFIRMED</u>

5